By the Court.—Van Vorst, J.
As both parties have appealed, this subject requires examination. The conclusion of the referee must be considered in connection with his fourth finding of fact, in which among other things he finds in these words : ‘1 The said Grant & Son “ had been the bankers and brokers of the said Hubbell “ in his prosecution of the said joint business during the “whole time that the said firm of Grant & Son had been “in existence, dating from some time in the year 1861 ; “ and prior to the year 1869, they had frequently sold “the paper of the said Hubbell and Taylor for the ac- “ count of said Hubbell, in conducting the said joint £ £ business at the current market rates. During the year “ 1867, such paper was unsalable, but from the business “ relations and course of dealings between the parties, “ the said Grant & Son were authorized to sell the said “ collaterals on the street, or to become the purchasers “ thereof themselves at the value of such paper, having “ reference to the business standing of the parties to it “ and the current rates for money, and to apply the pro- “ ceeds to the credit of said loans, and said paper was “ left as collateral for said advances made upon it, subject to such disposition of it by Grant & Son.”
It was acting under this understanding and course of dealing, without doubt, that the plaintiff on the 28th of September offered to John W. Thompson $20,000 of the paper at a discount, in excess of the legal rate of interest. Thompson took one note at that rate. There is no evidence that the plaintiff at the time reported that transaction to Hubbell. But on the 2d October, the *347 day on which they sent the draft to Thompson, they expressed their election in writing in their own "books, to take to themselves all the five acceptances, at the rate of 12 per cent, per annum, including the one already disposed of to Thompson at 8 per cent. They could not have properly taken to themselves this difference of four per cent, on the sale of this acceptance, unless they were justified in the act of crediting Hubbell with the avails of the five acceptances on that day, at the rate of 12 per cent., and charging the same to themselves. Grant & Son had fixed the market value of the paper in then-letter to Thompson, and had pronounced the paper good. The findings by the referee, and the facts and circumstances above alluded to, seem to justify the conclusion to which he came, that these five acceptances were void in the hands of Grant & Son, on account of usury.
But it is difficult to perceive upon what principle the referee can make a discrimination in favor of the moneys loaned, and exempt them from the taint which he fastened upon the drafts The acceptances were placed in the hands of Grant & Son, and the money was loaned and advanced by them on the faith of the paper left with them. When they advanced the money, they did so with the expectation of reaping all the advantages which the possession of the acceptances under the understanding and agreement, which the referee has pronounced usurious, would give them.
This advantage was to accrue to them on account of the loan and forbearance of the money. As far as appears, that was the only consideration for the advances.
If instead of advancing forty-five thousand dollars, they had advanced the whole amount of the first acceptances, less twelve per cent., under an understanding or agreement, that they could take to themselves the paper at an usurious rate of interest, they could no more recover the moneys advance as a loan, than they could *348 successfully maintain an action upon the papers upon which the money was loaned. The referee has found as facts that Hubbell had made payments to Grant & Son, and was entitled to money credits against them, subsequent to the 19th of September, which in the aggregate exceeds the sum of sixty thousand dollars, the amount of the specific advances made by Grant & Son on the first seven drafts; on the eighth acceptance no specific advance was made. The referee applies these payments and credits to the extinguishment of these specific advances made on the seven acceptances, and he finds as conclusion of law, that by the payments which were made on general accounts by Hubbell to Grant & Son, and the credits in his favor, between the 19th of September and the 26th of October, all the specific loans or advances of money on account of which the said seven acceptances were delivered to Grant & Son by Hubbell as collateral security, were paid.
To the findings of the referee in these respects, the plaintiff has excepted ; but we can discover no error in principle in the application of the payments made by the referee. There having been no application made by the parties at the time the law would apply them, which the referee has done, and there is no good reason assigned to disturb the application and findings made by him in this respect.
But the referee, after applying the payments and credits of Hubbell to the extinguishment of the specific advances made by Grant & Son on the seven acceptances, finds that there is a balance against Hubbell, on “ all the accounts and transactions” between the parties, of $40,937.96, and for which general balances both Hubbell and the defendant are jointly liable, and are jointly legally chargeable therewith. And he also finds as conclusions of law, that Grant & Son as bankers, both by agreement and in law, had a general lien upon the said drafts for any balance of account *349 which -there might at any time be in the course of the dealings in their favor against Hubhell; and that the last three drafts, exclusive of the five which he finds to be tainted with usury, are good and valid securities in the hands of the plaintiff for such balances, and that he is entitled to recover on such three drafts, against the defendant, the principal and interest of such balance of $40,937.96 ; and he reports accordingly, that the plaintiff is entitled to judgment against the defendant for the. balances. The evidence in the case, upon which the referee bases his findings, of any agreement between Grant & Son and Hubbell, that they should retain the drafts for any general balance of account in their favor against Hubbell, is far from satisfactory, and is based upon some general statements of Hubbell, who was a witness on the trial when such agreement was made, and upon what consideration and under what circumstances does not appear.
The weight of evidence rather tends to show that the first seven drafts were left as collateral security for the specific advances, amounting in the aggregate" to sixty thousand dollars, made thereon, and that they were to be sold by Grant & Son as Hubbell’s brokers, and the advances retained thereout; or, as the referee has found, Grant & Son had themselves an election to take them at the market rate. It does not appear that any such right to detain for a general balance had ever been claimed or set up by Grant & Son on any previous occasion ; but that, when acceptances had been theretofore paid to Grant & Son by Hubbell, they were delivered up.
In his fifth finding of fact the referee expressly finds, “ that in all similar prior transactions in the year 1867, the loans made by Grant & Son on the collateral security left with them by Hubbell were either paid by Hubbell and the collaterals talcen up by him before their maturity, or such loans were extinguished by the collection *350 of the amount thereof "by Grant & Son from the collateral securities at maturity.” Such previous dealing is entirely inconsistent with any right to detain the securities for a general balance. When there is no right to detain the possession of the collateral, after a specific loan upon it is paid, there can be no lien upon it after payment of the loan. The right of the debtor to pay the advance and take up a collateral before maturity, is not reconcilable with a right in the creditor to hold on after payment for any general balance. A right of possession is an essential ingredient to a lien upon personal property.
On the days when these particular drafts were left with plaintiff, there is no evidence that anything was said or agreed that they were to be detained for any general balance of account, and there is nothing in the previous dealings of the parties, as already urged, which tends to show that any such right was set up or supposed to exist.
Besides, the conduct of Grant & Son, in offering for sale two of the drafts to John W. Thompson, in September, shows conclusively that they had no idea of any right to hold on the paper after its payment; for by such disposition they would put it out of their power to do so. •
But there is another objection to impressing these acceptances with a lien for a general balance of account in favor of plaintiff.
The eight drafts were accepted by defendant for a specific purpose, to meet the payment of drafts drawn against credits given on the purchase of merchandise, and to be used at the bank where Hubbell kept his account, which was proved to be the City Bank.
At the time they were taken to Grant & Son, no consideration had as yet been received by either maker or acceptor. They were in no true sense, as the referee supposed, and has found, “ business paper. ’ ’
*351 Hubbell could not pledge them for any previous indebtedness from himself to Grant & Son, nor could he leave them properly as security for any moneys other than such as he might specifically obtain upon them.
General liens for a balance of account are not favored (Kent’s Com., Vol. 2, pp. 634, 636).
If there be a usage giving to persons engaged in discounting, buying, advancing on, or selling, bills or notes, a lien for a general balance against their customer, such usage should be proved. It will not be presumed to exist in the absence of an express agreement. Courts have judicially taken notice of the lien of “ bankers,” who are strictly such, and who are dealers in money. But even the lien of a banker does not exist if there be circumstances in any case inconsistent therewith (Bradnas v. Barnett, 3 Manning, Granger & Scott).
There are circumstances in this case above alluded to which are entirely inconsistent with a right to detain the drafts for a general balance.
It is obvious from these considerations that Grant & Son cannot hold nor recover on these acceptances for a general balance of account after the specific advances made upon them have been paid.
Besides, this action is brought upon the acceptances. There is no allegation in the complaint seeking to charge defendant jointly with Hubbell for this balance, and no opportunity has been given to the defendant by way of answer to deny his liability, express or implied, for any such balance of account. There was no issue on this subject raised by the pleadings.
If Taylor was at all liable for such balance, he was so jointly with Hubbell, and should be sued with Hub-bell therefor. A joint debtor cannot be separately prosecuted by such. indirection, especially when his joint liability is disputed.
In addition, it also appears by the evidence that long *352 after these actions were commenced, and in the month of January, 1869, the plaintiff commenced an action in this court against the defendant Hubbell individually, in which he demands judgment against him for moneys advanced and lent to him subsequent to the 19th September, 1867, and in which he demands judgment for $40,937.96, the precise balance for which the referee has found that plaintiff has a general lien on the drafts in question, and for which judgment has been rendered upon the referee’s report against the defendant in this action. It also appears by the evidence that Hubbell has consented in the above-mentioned action of the plaintiff against him individually, that judgment be entered against him therein for such balance.
In the form in which the defendant is sued, he has had no opportunity to set up by answer the effect of this subsequent action brought by plaintiff, and the offer of Hubbell therein. But in any aspect, the assertion of the plaintiff in such formal way by action of a claim against Hubbell individually for this balance, would appear to be inconsistent with a claim of a joint liability against Taylor and Hubbell for the same cause of action.
For these reasons the judgment founded upon the report of the referee is erroneous, and should be reversed. Having come to this conclusion, it is not necessary to pass upon the other grounds of reversal urged by the defendants, growing out of the execution of the compromise agreement of the 21st November, 1867.
The judgment appealed from should be reversed, the order of reference set aside, and a new trial ordered, with costs to the appellant to abide the event.
Monell and Sedgwick, JJ., concurred.
Noth.—The following case (Taylor v. Grant) relates to the same securities, and was decided upon nearly the same points.—Reporters.